**Linda A. BUIE, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

**No. 04–3071.**

United States Court of Appeals, Federal Circuit.

DECIDED: Oct. 12, 2004.

Linda A. Buie, pro se, of Kyle, TX.

Michael S. Dufault, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice,

of Washington, DC, for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Bryant G. Snee, Assistant Director.

Before RADER, LINN, and DYK, Circuit Judges.

LINN, Circuit Judge.

Linda A. Buie ("Buie") appeals from a final decision of the Merit Systems Protection Board ("Board"), affirming the decision of the Office of Personnel Management ("OPM") calculating the amount of Buie's deposit contributions to be made under the provisions of the Civil Service Retirement System ("CSRS"). *Buie v. Office of Pers. Mgmt.,* 94 M.S.P.R. 595 (2003) (No. DA–0831–02–0096–I–1). Because Buie's service was not "covered service" as defined by section 203(a)(3) of the Federal Employees' Retirement Contribution Temporary Adjustment Act of 1983 ("FERCTAA") and she is thus not eligible to claim the reduced deposit rate contained in 5 U.S.C. § 8334(c), we affirm.

## BACKGROUND

Buie was employed by the Internal Revenue Service ("IRS") from January 20, 1969 to September 14, 1984. *Buie,* 94 M.S.P.R. at 596. She later applied for, and received, a refund of her retirement contributions of $13,411.96 for that period of her service. *Id.* Buie was reemployed by the IRS from January 24, 1994 to July 19, 1994. *Id.* From August 6, 1994 to December 24, 1994, Buie worked as a Rural Carrier Relief for the U.S. Postal Service ("USPS"). *Id.* From December 24, 1994 to July 17, 1999, Buie worked for the USPS as a Rural Carrier Associate. *Id.* Buie's service from January 24, 1994 to July 17, 1999 was considered non-contributory service, and CSRS deductions were not taken from her pay. *Id.*

Buie later applied to OPM to redeposit her retirement contributions for her periods of service between 1969 and 1984, and for a further deposit for her non-deduction periods of service between 1994 and 1999. *Id.* OPM sent Buie a bill for redeposit of contributions for $46,341.00 ($13,411.00 redeposit plus $32,930.00 interest), and deposit of contributions in the amount of $8,498.00 ($6,560.00 deposit and $1,938.00 interest). *Id.* Buie disagreed, but OPM determined that its calculations were correct. *Id.* at 596–97.

Buie appealed OPM's decision. In an initial decision, the Board found that OPM correctly calculated the amount of redeposit and interest for Buie's service between 1969 and 1984. *Id.* at 597. However, the administrative judge found that OPM had improperly calculated the amount of deposit and interest for Buie's service between 1994 and 1999, holding that OPM had improperly relied on the basic pay rate in 5 U.S.C. § 8334(c) instead of the rate in 5 U.S.C. § 8334(k). *Id.*

OPM filed a petition for review of the Board's initial decision. *Id.* In a final decision, the Board reversed the initial decision's holding regarding the deposit for Buie's 1994 to 1999 service, holding that Buie did not fall within the reduced deposit exception of 5 U.S.C. § 8334(c). *Id.* at 602.

Buie appealed the Board's deposit determination to this court. We have jurisdiction from an appeal of a final decision of the Board pursuant to 28 U.S.C. § 1295(a)(9).

## ANALYSIS

### A. *Standard of Review*

■ "Our scope of review in an appeal from a decision of the Board is limited.

Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence." *Abell v. Dep't of the Navy*, 343 F.3d 1378, 1382–83 (Fed.Cir.2003); 5 U.S.C. § 7703(c) (2000).

"The petitioner bears the burden of establishing error in the Board's decision." *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed.Cir.1998).

### B. *The Parties' Arguments*

■ The parties dispute what basic pay rate under 5 U.S.C. § 8334(c) applies to Buie's deposit for her service between 1994 and 1999. Buie argues that she should not be subject to the deposit rate set forth in section 8334(c) for her non-deduction service because her service was "covered service" under the FERCTAA exception in section 8334(c). According to Buie, to hold otherwise would render section 8334(c)'s exceptions a nullity.

The Government, representing OPM, responds that Buie's service was not "covered service" as defined by section 203(a)(3) of FERCTAA. The Government argues that under the plain language of section 203, the Board correctly concluded that "covered service" included only federal employees that were made subject to Social Security coverage for the first time by section 101 of the Social Security Amendments of 1983, Pub. L. No. 98–21, 97 Stat. 65, 67–68 (codified at 42 U.S.C. § 410). The Government argues that under *Taxera v. Office of Personnel Management*, 95 M.S.P.R. 97 (2003) ("*Taxera II*"), these employees include members of Congress, congressional employees, the President and Vice–President, officers serving under the Executive Schedule at 5 U.S.C.

§§ 5312–5317, non-career Senior Executive Service or Senior Foreign Service employees, Article I and Article III judges, and all other federal employees not subject to CSRS because they were subject to a different federal employee retirement system. The Government contends that the specific language in section 203(a)(3) referring to employees who were subject to Social Security "by reason of" amendments enacted by Pub. L. No. 98–21 excludes federal employees that were not covered by CSRS, but were covered by Social Security under provisions in effect prior to the enactment of Pub. L. No. 98–21. The Government argues that the legislative history is consistent with this interpretation.

### C. *The Statute*

Section 8334(c) provides:

Each employee or Member credited with civilian service after July 31, 1920, for which retirement deductions or deposits have not been made, may deposit with interest an amount equal to the following percentages of his basic pay received for that service . . . .

5 U.S.C. § 8334(c) (2000). Section 8334(c) provides a table of "percentage of basic pay rates" for various government positions. It provides a 7% basic pay rate for "Employee" service from January 1, 1970 to December 31, 1998, and a 7.25% rate for service from January 1, 1999 to December 31, 1999. *Id.*

However, section 8334(c) contains an exception that provides an alternate contribution of the percentage of basic pay:

*Notwithstanding the preceding provisions of this subsection and any provision of section 206(b)(3) of the Federal Employees' Retirement Contribution Temporary Adjustment Act of 1983 [("FERCTAA")], the percentage of basic pay required under this subsection in the case of an individual described in*

*section 8402(b)(2) shall, with respect to any covered service (as defined by section 203(a)(3) of such Act)* performed by such individual after December 31, 1983, and before January 1, 1987, be equal to 1.3 percent, and, with respect to any such service performed after December 31, 1986, *be equal to the amount that would have been deducted from the employee's basic pay under subsection (k) of this section* if the employee's pay had been subject to that subsection during such period.

*Id.* (emphases added). This exception allows employees described under section 8402(b)(2) to contribute a different percentage "with respect to any covered service" as defined by section 203(a)(3) of FERCTAA. *Id.*

Section 203(a)(3) of FERCTAA provides a definition of "covered service":

the term "covered service" means service which is employment for the purposes of Title II of the Social Security Act and chapter 21 of the Internal Revenue Code of 1954 by reason of the amendments made by section 101 of the Social Security Amendments of 1983 (97 Stat. 67) . . . .

Federal Employees' Retirement Contribution Temporary Adjustment Act of 1983, Pub. L. No. 98–168, § 203(a)(3), 97 Stat. 1106, 1107 (codified at 5 U.S.C. § 8331, note).

Section 101(a) of the Social Security Amendments struck out the existing paragraphs (5) and (6) defining types of federal service excluded from the term "employment" and "insert[ed] in lieu thereof" new paragraphs (5) and (6) defining different types of federal service excluded from the term "employment." Social Security Amendments of 1983, Pub. L. No. 98–21, § 101(a), 97 Stat. 65, 67 (codified at 42 U.S.C. § 410(a)(5)-(6)); *see also Knudtson*

*v. Office of Pers. Mgmt.,* 59 M.S.P.R. 627, 631 (1993).

In what has been termed "an exception to the exception," *United States v. Hatter,* 532 U.S. 557, 563, 121 S.Ct. 1782, 149 L.Ed.2d 820 (2001), new paragraph (5) provided the following provisions:

except that this paragraph shall not apply with respect to—

(i) service performed as the President or Vice President of the United States,

(ii) service performed—

(I) in a position placed in the Executive Schedule under *sections 5312 through 5317 of title 5,* United States Code,

(II) as a noncareer appointee in the Senior Executive Service or a noncareer member of the Senior Foreign Service, or

(III) in a position to which the individual is appointed by the President (or his designee) or the Vice President under *section 105(a)(1), 106(a)(1),* or *107(a)(1)* or *(b)(1) of title 3,* United States Code, if the maximum rate of basic pay for such position is at or above the rate for level V of the Executive Schedule,

(iii) service performed as the Chief Justice of the United States, an Associate Justice of the Supreme Court, a judge of a United States court of appeals, a judge of a United States district court (including the district court of a territory), a judge of the United States Claims Court, a judge of the United States Court of International Trade, a judge of the United States Tax Court, a United States magistrate, or a referee in bankruptcy or United States bankruptcy judge,

(iv) service performed as a Member, Delegate, or Resident Commissioner of or to the Congress, or

(v) any other service in the legislative branch of the Federal Government....

*See* Social Security Amendments of 1983, Pub. L. No. 98–21, § 101(a)(1), 97 Stat. 65, 68 (codified at 42 U.S.C. § 410(a)(5)).

### D. *Statutory Interpretation*

Under section 8334(c), "[a]n employee's creditable civilian service after July 31, 1920, for which retirement deductions have not been made, will not be included in computing the amount of his CSRS annuity unless he makes a deposit, with interest, for such service." *Knudtson,* 59 M.S.P.R. at 629 (citing 5 U.S.C. § 8334(c) and 5 C.F.R. § 831.303). Federal employees "may deposit with interest" an amount equal to a specified percentage of his or her basic pay received for that service. 5 U.S.C. § 8334(c) (2000). Pertinent to this case, that basic pay rate is 7% for any "Employee" service from January 1, 1970 to December 31, 1998, and 7.25% for service from January 1, 1999 to December 31, 1999. *Id.*

Buie argues that her service falls under the exception to section 8334(c), thus entitling her deposit to be calculated under the lower basic pay rate of 5 U.S.C. § 8334(k) enumerated in the exception. Under the plain language of section 8334(c), Buie is eligible to claim the lower basic pay rate under the exception if: (1) she is an employee described under 5 U.S.C. § 8402(b)(2); and (2) the relevant period of her employment was "covered service" as defined by section 203(a)(3) of FERCTAA. 5 U.S.C. § 8334(c) (2000); *Buie,* 94 M.S.P.R. at 599; *Knudtson,* 59 M.S.P.R. at 630. Neither party disputes that Buie is an employee described under 5 U.S.C. § 8402(b)(2), because Buie had performed

five years of civilian service before January 1, 1987 that was creditable under the CSRS. *See* 5 U.S.C. § 8402(b)(2)(B) (2000).

The parties principally dispute whether Buie's service was "covered service" within the meaning of section 203(a)(3) of FERCTAA. Under the plain language of section 203(a)(3) of FERCTAA, "covered service" includes only federal service that became "employment ... by reason of" the amendments to the Social Security Act made by section 101 of the Social Security Amendments of 1983. The "by reason of" language includes only categories of federal service that were brought within the meaning of "employment" because of the amendments in section 101 of the Social Security Amendments of 1983, and not because of other statutory or regulatory provisions. *Knudtson,* 59 M.S.P.R. at 630–31 ("We interpret [section 201(a)(3)] as covering only service that became 'employment' for the stated purposes 'by reason of,' i.e., because of, the 1983 Amendments and not covering service that was or became 'employment' for these purposes because of other statutory or regulatory provisions.").

In a thorough analysis, the Board in *Taxera II* examined the pre and post–1983 amendment paragraphs of the Social Security Act, the legislative history, and the Supreme Court precedent to determine the effect of the statutory changes made by section 101 of the Social Security Amendments of 1983. *See Taxera II,* 95 M.S.P.R. at 102–03. In that analysis, the Board found that the new paragraph (5) of section 210(a) of the Social Security Act exempted certain specific categories of federal service from the definition of "employment," including, *inter alia,* the President, Vice–President, non-career Senior Executive Service, non-career Senior Foreign Service, federal judges, and certain legislative branch employees ("exempted high-

level federal employees"). *Taxera II*, 59 M.S.P.R. at 103 (quoting H.R.Rep. No. 98–25, at 39 (1983), *reprinted in* 1983 U.S.C.C.A.N. 219, 257); *see also Hatter*, 532 U.S. at 563, 121 S.Ct. 1782 (discussing the class of federal employees named in new paragraph (5)).

The Supreme Court recognized that the amendments seemed "to *require* this class of current federal employees to enter into the Social Security program . . . ." *Hatter*, 532 U.S. at 563, 121 S.Ct. 1782 (citing 42 U.S.C. § 410(a)(5)(C)-(G)). However, for these exempted high-level federal employees, Congress guaranteed that participation in the Social Security system would not result in an increase in deductions from their basic pay. *See id.; see also Taxera II*, 95 M.S.P.R. at 103.

Under this "exception to the exception," section 203(a)(2) said that any exempted high-level federal employees who contributed to a "covered" retirement program nonetheless could modify their participation such that their payroll deduction for retirement and Social Security remained unchanged—a 7% deduction, at the time, and no more. *Hatter*, 532 U.S. at 563, 121 S.Ct. 1782. The exception defined a "covered" program to include the CSRS as well as any other program to which an employee must contribute. *Id.*

The legislative history is in line with this statutory construction and recognizes that section 101 of the Social Security Amendments of 1983 brought these exempted high-level federal employees under Social Security for the first time. The House Report explained:

> Section 101(a) of the bill provides Social Security coverage for Federal employees hired on or after January 1, 1984 and for certain current Federal employees including the President, Vice President, appointed Federal officials, Federal judges, members of Congress and legislative employees who are not covered under a federal retirement system. Section 101(a)(1) of the bill replaces paragraphs (5) and (6) of section 210(a) of the Social Security Act with new paragraphs (5) and (6). (The present paragraphs (5) and (6) generally exclude from the definition of Social Security covered employment civilian service performed in the employ of the United States or an instrumentality of the United States.)
>
>          * * *
>
> The new paragraph (5) [of section 210(a) of the Social Security Act] does not apply to service: (1) as President or Vice President of the United States, (2) in a position established under sections 5312 through 5317 of title 5, United States Code, as a noncareer appointee of the Senior Executive Service or a noncareer member of the Senior Foreign Service, or in a position to which the individual is appointed by the President or Vice President under sections 105(a)(1), 106(a)(1), or 107(a)(1) or (b)(1) of title 3, United States Code, if the position's basic pay is at or above the rate for level V of the Executive Schedule; (3) as a member of the Supreme Court, [and other federal judges]; (4) as a Member, Delegate, or Resident Commissioner of or to the Congress; or (5) as an employee of the legislative branch who is not covered under the Civil Service Retirement System as of January 1, 1984. *The effect of not applying paragraph (5) to such service is that such service is covered under Social Security beginning January 1, 1984.*

H.R. Rep. No. 98–25, at 39 (1983) (emphasis added), *reprinted in* 1983 U.S.C.C.A.N. 219, 257–58.

Thus, the exception to new paragraph (5) added by the Social Security Amend-

ments of 1983 specifically required these exempted high-level federal employees to participate in the Social Security program while freeing them of any added financial obligation so long as they previously had participated in other contributory retirement programs. *See Hatter,* 532 U.S. at 564, 121 S.Ct. 1782; Social Security Amendments of 1983, § 101(a)(1), 97 Stat. 65, 67–68. As the House Report recognized, the exception to new paragraph (5) brought such service under Social Security coverage for the first time. H.R. Rep. No. 98–25, at 39 (1983), *reprinted in* 1983 U.S.C.C.A.N. 219, 258. Thus, the service of only these exempted high-level federal employees became "covered service" "by reason of" section 101 of the Social Security Amendments of 1983.

Buie's service was not "covered service" within the meaning of the exception to 5 U.S.C. § 8334(c). Buie's non-CSRS service between January 24, 1994 and July 17, 1999 would have been subject to Social Security coverage under the provisions of the Social Security Act in effect before the enactment of the Social Security Amendments of 1983, and therefore did not *become* "covered service" "by reason of" those amendments. *See* 5 U.S.C. § 8334(c) (2000); Federal Employees' Retirement Contribution Temporary Adjustment Act of 1983, Pub. L. No. 98–168, § 203(a)(3), 97 Stat. 1106, 1107; *Buie,* 94 M.S.P.R. at 602; *see also Taxera II,* 95 M.S.P.R. at 101. Buie is therefore not eligible for the reduced deposit rate exception in 5 U.S.C. § 8334(c).

## CONCLUSION

Because Buie's service was not "covered service" as defined by section 203(a)(3) of FERCTAA, we affirm that Buie is not entitled to a reduced deposit rate con-

tained in the exception to 5 U.S.C. § 8334(c).

*AFFIRMED.*

## COSTS

No costs.