NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DAVID L. MURPHY, KAREN DAHLSTROM,**
*Petitioners*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

---

2023-2019

---

Petition for review of the Merit Systems Protection Board in Nos. DA-0841-16-0522-I-1, DA-0841-16-0523-I-1, DA-0841-16-0524-I-1.

---

Decided: August 1, 2024

---

DAVID L. MURPHY, Palm Desert, CA, pro se.

KAREN DAHLSTROM, Palm Desert, CA, pro se.

BORISLAV KUSHNIR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, DEBORAH ANN BYNUM, PATRICIA M. MCCARTHY.

---

Before PROST, CLEVENGER, and CHEN, *Circuit Judges*.

PER CURIAM.

Petitioners David L. Murphy and Karen Dahlstrom appeal a decision of the Merit Systems Protection Board (Board), which affirmed a decision of the Office of Personnel Management (OPM) to deny petitioners' challenges to OPM's recovery of overpayments to petitioners' annuity benefits under the Federal Employees' Retirement System (FERS). For the reasons discussed below, we *affirm*.

## BACKGROUND

Mr. Murphy and Ms. Dahlstrom are former federal employees that receive annuity benefits under FERS. They are married and share a joint bank account. Due to OPM's error, between May 2013 and February 2014, petitioners received nine payments of funds intended for another annuitant into their joint account at Gate City Bank, totaling $5,486.65. OPM indicated it recovered $2,800.00 from Gate City Bank, leaving petitioners' joint overpayment balance at $2,686.65.

Between August and November 2014, OPM administratively offset petitioners' annuity payments, ultimately recovering a total of $1,343.32 from each petitioner. In June 2016, however, OPM authorized refunds in the amount of $1,343.32 to each of Mr. Murphy and Ms. Dahlstrom because it had not provided petitioners with due process prior to the 2014 administrative offsets. Subsequently, in letters dated July 2016, OPM individually informed petitioners of its final decisions finding petitioners liable for the remaining overpayment balance of $2,686.65. In the same letters, OPM informed petitioners that it would collect $1,343.33 from Mr. Murphy's annuity, and $1,343.32 from Ms. Dahlstrom's annuity, over fourteen monthly installments beginning in November 2016.

Petitioners appealed OPM's final decisions to the Board, and the administrative judge consolidated their

appeals for adjudication. The administrative judge issued an initial decision affirming OPM's final decisions, finding that OPM established by preponderant evidence that it issued to petitioners' joint bank account an overpayment of $5,486.65, to which petitioners were not entitled. The administrative judge further found that petitioners failed to prove their affirmative defense of whistleblower reprisal and failed to establish that they were entitled to waiver of the overpayment or adjustment of the repayment schedule.

Mr. Murphy and Ms. Dahlstrom petitioned the Board for review of the initial decision. On March 29, 2023, the Board affirmed the initial decision with one modification. Petitioners appealed to this court on June 7, 2023—70 days after the Board's final decision.

## DISCUSSION

### I.

This court has jurisdiction over final orders and final decisions of the Board under 28 U.S.C. § 1295(a)(9). A petition for review "shall be filed within 60 days after the Board issues notice of the final order or decision of the Board." 5 U.S.C. § 7703(b)(1)(A).

We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *Briggs v. Merit Sys. Prot. Bd.*, 331 F.3d 1307, 1311 (Fed. Cir. 2003).

### II.

The government initially contended that this court lacks jurisdiction over this case because petitioners did not appeal until after the 60-day deadline set forth in 5 U.S.C. § 7703(b)(1)(A). During the pendency of this appeal, however, the Supreme Court decided *Harrow v. Department of*

*Defense*, 601 U.S. 480 (2024), holding that the 60-day time limit to petition this court for review of a final Board decision is not jurisdictional. *Id.* at 482. Subsequently, in a memorandum in lieu of oral argument filed out of time, the government withdrew its argument that petitioners' appeal should be dismissed for lack of jurisdiction. Respondent's Mem. in Lieu of Oral Arg. 1–2, ECF No. 34-2. The government thus no longer challenges this court's jurisdiction over this appeal and we likewise do not identify any unfulfilled jurisdictional requirement.

In its untimely filed memorandum, the government argued for the first time in this case that the 60-day deadline under section 7703(b)(1)(A), though not jurisdictional, is still mandatory and thus not subject to equitable tolling.[1] Respondent's Mem. 2, ECF No. 34-2. For support, the government points to the *Harrow* Court's decision to remand to this court to determine whether equitable tolling is available under section 7703(b)(1)(A). *Id.*

We find that the government forfeited this argument by failing to raise it in its informal response brief, in which it made only two arguments: (i) that "equitable tolling would be unwarranted *under the unique circumstances of this appeal*," Respondent's Informal Br. 8 (emphasis added), and (ii) that the Board correctly decided the case on the merits, *id.* at 18, 21. Nowhere in its informal response brief did the government argue that equitable tolling is unavailable generally under section 7703(b)(1)(A),

---

[1] The government failed to make this argument in its informal response brief, filed on March 22, 2024, despite previously raising this same argument in its Brief for the Respondent filed in *Harrow* on February 12, 2024. *See* Brief for Respondent at 42–44, *Harrow*, 601 U.S. 480 (No. 23-21), 2024 WL 647080. We deny the government's motion for leave to file its memorandum in lieu of oral argument out of time, ECF No. 34-1.

despite acknowledging that the Supreme Court might conclude in *Harrow* that the 60-day deadline is not jurisdictional.

Although we have discretion to reach forfeited arguments on appeal, we decline to address the government's late-raised legal argument. Because the Board did not err on the merits, we *affirm* the Board's decision, and thus do not reach the government's other argument that equitable tolling is unavailable under the facts of this case.

## III.

Petitioners contend that the Board erred in several respects. We address each argument in turn.

First, petitioners argue that they were not afforded due process because OPM recovered money from their annuity payments without issuing a final decision letter. Petitioners' Informal Br. 4. To the extent that this argument refers to the administrative offsets OPM conducted in 2014, OPM fully refunded those offset funds to petitioners in 2016. After OPM issued the refunds, the administrative judge dismissed petitioners' initial appeal to the Board challenging OPM's 2014 administrative offsets for lack of jurisdiction. SAppx3 n.4.[2] Because petitioners did not appeal that dismissal, *id.*, the 2014 administrative offsets are not before this court. To the extent that petitioners argue they were not afforded due process with respect to the administrative offsets OPM conducted beginning in November 2016, OPM issued "initial final overpayment decision" letters to both Mr. Murphy and Ms. Dahlstrom in July 2016. SAppx39–44. Because OPM notified petitioners of its final decisions prior to conducting those administrative offsets, we are unpersuaded that petitioners were not afforded due process.

---

[2] "SAppx" refers to the appendix filed with the government's informal brief.

Second, petitioners argue that the erroneously deposited funds they received were not "overpayment[s]," but rather "misdirected payment[s]" that OPM had no right to recover. Petitioners' Informal Br. 7. This is because, according to petitioners, the payments were directed to another annuitant, Thomas Gaulin, rather than to Mr. Murphy or Ms. Dahlstrom. As the Board found, this argument is unavailing because an overpayment or debt under FERS is "a payment of benefits to an individual in the absence of entitlement or in excess of the amount to which an individual is properly entitled." 5 C.F.R. § 845.203; *see* SAppx6. Because OPM proved by preponderant evidence the existence and amount of the overpayments, and petitioners offer no basis for finding they were entitled to the overpayments, we agree with the Board that the erroneously deposited funds constituted a "debt" under FERS regardless of whether the funds were intended for another annuitant.

Third, petitioners argue that because the overpayments were caused by Gate City Bank's error, the bank was responsible for full repayment to OPM. Petitioners' Informal Br. 6. In particular, petitioners note that OPM recovered a partial amount of the overpayment directly from the bank, "beg[ging] the question, if the bank is responsible for some of it, why are they not responsible for 'all' of it." *Id.* As the Board noted, however, petitioners do not identify any basis for OPM to hold the bank liable for funds that were erroneously directed to, and deposited into the account of, the wrong annuitant.

Fourth, petitioners allege that they did not receive a fair hearing before the administrative judge because they were not allowed to question any witnesses, including Kevin Martin, Acting Chief of Quality Control and Authorization in Operations Support, Retirement Services, at OPM. Petitioners' Informal Br. 4–6. Petitioners contend that testimony by Mr. Martin "was crucial to the fact that

OPM and Gate City [B]ank were the responsible parties in this case." *Id.* at 4.

Because "[p]rocedural matters regarding discovery and evidentiary issues 'fall within the sound discretion of the [B]oard and its officials,'" this court "will not overturn the Board's determinations on such issues 'unless an abuse of discretion is clear and is harmful.'" *Rueter v. Dep't of Com.*, 63 F.4th 1357, 1371 (Fed Cir. 2023) (quoting *Curtin v. Off. of Pers. Mgmt.*, 846 F.2d 1373, 1378 (Fed. Cir. 1988)) (second alteration in original). To show an abuse of discretion, the petitioner "must prove that the error caused substantial harm or prejudice to his rights which could have affected the outcome of the case." *Id.* (quoting *Curtin*, 846 F.2d at 1379).

Here, petitioners do not demonstrate that their inability to question Mr. Martin as a witness caused substantial harm or prejudice that could have affected the outcome of the case. As discussed above, petitioners do not identify any basis for OPM to hold the bank liable for the overpayments, and Mr. Martin's testimony would not provide such basis. Nor do petitioners explain how Mr. Martin's testimony might support a position that petitioners were entitled to waiver of the overpayment or an adjustment to the repayment schedule. OPM may waive recovery of overpayments "when, in the judgment of [OPM], the individual is without fault and recovery would be against equity and good conscience." 5 U.S.C. § 8470(b); *see also* 5 C.F.R. § 845.301. Recovery is against equity and good conscience when any of the following are met:

(a) It would cause financial hardship to the person from whom it is sought;

(b) The recipient of the overpayment can show (regardless of his or her financial circumstances) that due to the notice that such payment would be made or because of the incorrect payment he or she either

> has relinquished a valuable right or has changed positions for the worse; or
>
> (c) Recovery would be unconscionable under the circumstances.

5 C.F.R. § 845.303. Furthermore, a recipient of an overpayment who is ineligible for waiver "is nevertheless entitled to an adjustment in the recovery schedule if he or she shows that it would cause him or her financial hardship to make payment at the rate scheduled." *Id.* § 845.301.

Petitioners do not demonstrate how Mr. Martin's testimony could support a finding of financial hardship or any other circumstance warranting repayment waiver or adjustment. Accordingly, we discern no abuse of discretion in the administrative judge's decision not to allow petitioners to call Mr. Martin as a witness.

Finally, petitioners contend that the Board erred in affirming the administrative judge's finding that petitioners failed to prove their affirmative defense of whistleblower reprisal because, according to petitioners, they are protected under the Whistleblower Protection Act as former federal employees. Under the Whistleblower Protection Act:

> [A]n employee, former employee, or applicant for employment may, with respect to any personnel action taken, or proposed to be taken, against such employee, former employee, or applicant for employment, as a result of a prohibited personnel practice *described in section 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D)*, seek corrective action from the Merit Systems Protection Board.

5 U.S.C. § 1221(a) (emphasis added). Sections 2302(b)(8) and 2302(b)(9) refer to only personnel actions with respect to or against "any employee or applicant for employment," but not former employees. *Id.* § 2302(b)(8)–(9). We have interpreted these statutory provisions, in combination, to

mean that "although a former employee may file an appeal for corrective action under the Whistleblower Protection Act, the appeal must concern actions that occurred while the individual was an employee or applicant for employment." *Guzman v. Off. of Pers. Mgmt.*, 53 F. App'x 927, 930 (Fed. Cir. 2002); *see also Nasuti v. Merit Sys. Prot. Bd.*, 376 F. App'x 29, 34 (Fed. Cir. 2010) ("[I]t is difficult to stretch the statutory language to cover a claim brought by a former employee complaining of agency action taken after the termination of employment in response to a disclosure that was also made after the termination of his employment.").

The alleged protected disclosures here occurred in 2014, after Mr. Murphy and Ms. Dahlstrom had retired from federal service in 2012 and 2009, respectively. The administrative judge thus appropriately concluded that petitioners are not protected by the Whistleblower Protection Act because they cannot show that they were employees or applicants for employment at the time of the alleged protected disclosures or alleged retaliation. We conclude that the Board did not err in upholding this finding.

## CONCLUSION

We have considered petitioners' remaining arguments and find them unpersuasive. For the reasons above, we *affirm* the Board's decision.

## **AFFIRMED**

### COSTS

No costs.